IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA,
WEST PALM BEACH DIVISION

SCOTT SAINT KILLIAN,

        Plaintiff,

vs.                                             Case No. 9:21-cv-80621

ALEJANDRO NICHOLAS MAYORKAS,
SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY, in his official
capacity,

        Defendants.

_____

## COMPLAINT

Plaintiff SCOTT SAINT KILLIAN, by and through the undersigned counsel sues Defendant ALEJANDRO NICHOLAS MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY and states as follows:

### INTRODUCTION

1.    This is an action for injunctive and declaratory relief, filed by Plaintiff SCOTT KILLIAN, an employee of the Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS").

2.    As described herein, Plaintiff Killian has suffered discrimination on the basis of sex, including gender orientation, and retaliation for complaining of this discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000(e), et. seq.

3.    Plaintiff seeks injunctive relief enjoining Defendant from its continued discrimination and retaliation, as well as declaratory relief and damages for the harmful effect,

including economic and emotional harm already suffered by Plaintiff, that is the result of the ongoing and repeated discrimination and retaliation by the Plaintiff.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §§ 1331 and 1333(a)(4), 42 U.S.C.A. §§ 2000(e)-16(d) and 2000(e)-5(f)(3), and the Declaratory Judgment Act, 28 U.S.C.A. § 2201.

5. Venue is proper in this district, pursuant to 28 U.S.C.A. § 1391 and 42 U.S.C.A. § 2000(e)-5 (f)(3), as the cause of action giving rise to the conduct occurred in this district.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted his administrative remedies. Plaintiff also timely complained in compliance with 29 C.F.R. § 1614.105(a)(1) and invoked and pursued the EEO process[1]. A copy of Plaintiff's operative complaint, as amended, to the Defendant and the EEOC is attached hereto as Exhibit "A." It has been over 180 days since Plaintiff filed his complaint alleging discrimination and retaliation with no final agency decision or action.

7. Thus, any and all conditions precedent to this lawsuit have been performed, waived or excused.

---

[1] On December 30, 2020, over 180 days since he first complained, Plaintiff withdrew his request for an EEOC hearing. The EEOC Administrative Judge dismissed his complaint from the hearings process. Exhibit "B." Plaintiff is not required to wait any longer to file this lawsuit, since the 180-day period has elapsed without either a final agency decision or EEOC hearing.

## PARTIES

8.       Plaintiff, Scott Saint Killian, is a senior employee of USCIS, an agency of Defendant U.S. Department of Homeland Security. He is currently assigned to the USCIS office in West Palm Beach, Florida and resides in Royal Palm Beach, Florida.

9.       Defendant Alejandro Nicholas Mayorkas is Secretary of the U.S. Department of Homeland Security and is sued in his official capacity .

## FACTUAL ALLEGATIONS

10.      In summary, as described in detail below, a supervisor at Plaintiff's office forced Plaintiff, a heterosexual male, to view sexually explicit homosexual pornography and engaged in other, similar sexually suggestive and inappropriate conduct while at work. When Plaintiff complained of this behavior, Defendant retaliated, subjecting him to a long-term campaign of humiliation, hostility, and work-related harassment.

11.      Plaintiff has been an officer with USCIS since the 1990s. Since 2011, he has been employed at the USCIS Field Office in West Palm Beach, Florida. He is currently a senior-status officer, GS-13.

12.      Plaintiff has always had an excellent performance record. In 2017, he received an excellence award from DHS for having no substantive errors in the last five years. This award results in a high rating and higher bonuses among senior DHS officers. Plaintiff has not had any formal discipline in his entire career history, since 1996, until after he complained of the conduct described herein.

13. In February 2018, a supervisor, Eugenio Rosado, called Plaintiff into his office. Supervisor Rosado made homosexual propositions to Plaintiff and showed Plaintiff homosexual pornography on Rosado's phone. Plaintiff promptly complained the next day to his immediate supervisor, Siva Muttuswamy. Upon information and belief, no corrective action was taken in response to this complaint.

14. Following Plaintiff's complaint, his next performance rating suffered for the first time ever in his career and he received a performance rating lowered one deviation out of five.

15. In November 2018, Supervisor Rosado told Plaintiff how good sodomy felt. Rosado also told Plaintiff that he enjoyed going to adult theaters and having men ejaculate on him.

16. After Plaintiff complained again, Rosado was made his acting supervisor.

17. In November 2018, Supervisor Rosado was heard playing pornography in men's voices very loudly from his office when he believed that only he and Plaintiff were in the building. Instead, there were other individuals in the building. One of them was a witness to the pornography that was being played and told Plaintiff that he recognized that the pornography was from men groaning inside Supervisor Rosado's office.

18. Following this incident, Plaintiff again complained to a supervisor, Mr. Muttuswamy, about sexual harassment at the hands of Supervisor Rosado. Muttuswamy told Plaintiff that he never took any action on the first complaint because it would be embarrassing to Rosado and that it was a personal office matter.

19. Plaintiff then complained to other superiors, including sending an email to Daniel Renaud, who was at the time an Associate Director of Field Operations for USCIS. Again, no

corrective action was taken and instead Defendant continued to retaliate against Plaintiff for his continued complaints about Supervisor Rosado's continued harassment.

20. In February 2019, Plaintiff was constructively demoted, as he was informed he may no longer serve as acting section chief and was denied access from the secured file room as well as from the fraud investigation room.

21. In June 2019, Plaintiff received a letter at his desk mailed anonymously from outside, letting Plaintiff know that he is going to be placed on a "PIP," i.e., performance improvement plan, and later fired. Plaintiff suffered a stroke by the end of the day.

22. On June 15, Defendant denied Plaintiff's request for a medical accommodation ordered by his physician was denied and ordered him to return to work.

23. After he returned to work following his stroke, Plaintiff was admonished by a supervisor for failing to move boxes or files quickly enough, due to the fact that his left hand was unable to hold boxes or files due to the stroke.

24. Throughout this time, Plaintiff continued to complain to his two other supervisors that the harassment was causing him to feel ill and was ignored. To the contrary, Defendant stepped up the harassment.

25. For example, in July, two other senior officers at Plaintiff's office were provided a weeklong training so that they could provide annual training to non-senior level officers. Plaintiff was the only senior officer excluded from this training and was not allowed to provide a training in over a year. He was thus excluded from all training opportunities and constructively demoted.

26. In August of that year, his assigned supervisor, Mr. Siva, told him to drop his EEO complaint because it was causing trouble. His supervisor indicated that this instruction was coming from the Field Office Director, Wendy Wilcox. Plaintiff was told that if he did not drop the complaint, his rating as well as his supervisor's rating, would be lowered.

27. In September 2019, Plaintiff's performance appraisal was again lowered, and all cash awards removed.

28. In October 2019, Mr. Muttuswamy informed Plaintiff that he would not be allowed to do Plaintiff's performance rating, as he had been instructed that the Field Office Director would instead make that decision.

29. In October 2019, Plaintiff's performance rating was again lowered three out of five achieved expectations, the lower lowest rating of any person in his position and the lowest rating Plaintiff had ever received in 25 years, despite the fact that he continued to perform at a high level.

30. In November 2019, Plaintiff's Field Office Director proposed his suspension for Plaintiff's failure (infra.) to move boxes while on light duty when returning from hospitalization following his stroke.

31. In December 2019, Plaintiff was reassigned to a different supervisor, and the following week was told that he was going to be required to submit all of his cases for 100% review to the supervisor. Shortly thereafter, Plaintiff was diagnosed with sudden onset cataracts, which in the opinion of his physician were related to the stroke at work and rendered him legally blind.

32. Subsequently, two other senior officers were again provided office training from which he was excluded, and indeed, Plaintiff was not even advised ahead of time that the training

6

was going to take place. He found out because other staff contacted him to ask if he had been demoted once they saw that he was not included in the senior officer level training.

33. This type of employment-based harassment and humiliation continued for months and continues to this day. Indeed, in March 2021, Plaintiff's application for promotion to Supervisory Immigration Services Officer (Section Chief) for the West Palm Beach office was determined to be not worthy of review and consideration, even though he is the most qualified senior officer at that location. Indeed, his application for this promotion was reviewed twice before for the same opening and he was found to be the highest ranked candidate on the list. Plaintiff's complaint and request for information as to why individuals who are less educated and qualified were being interviewed has still not been responded to.

**COUNT I (HARASSMENT BASED ON SEX)**
**(TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. §§ 2000(e), ET. SEQ.)**

34. Plaintiff Killian hereby realleges and reavers paragraphs 1-33 as if fully set forth herein.

35. Plaintiff Killian is a member of a protected class, male.

36. As alleged in detail above, on a continuing basis since at least 2018 when Plaintiff complained of sexual harassment, Defendant was aware that he had been subjected to unwelcome advances and conduct related to his sex, male, in violation of 42 USC §§ 2000(e)-2(a) and 42 USC §§ 2000(e)-3(a). The harassment and unlawful employment practices suffered by Plaintiff Killian were based on his sex, male.

37. The effect of the harassment and the unlawful employment practices complained of herein was sufficiently severe and pervasive and had the purpose and effect of unreasonably

interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment for Plaintiff.

38. The effect of the harassment and the unlawful employment practices complained of herein has been to deprive Plaintiff of equal employment opportunities and otherwise adversely impact his employment status because of his sex.

39. The unlawful employment practices complained of herein were intentional and caused Plaintiff to suffer emotional distress including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and/or personal stress and mental as well as physical pain and suffering and negative consequences.

40. The unlawful employment practices complained of herein were intentional and caused Plaintiff to lose earnings, compensation, opportunities for promotion, and income.

41. The unlawful employment practices complained of herein were engaged in with malice and/or with reckless indifference to Plaintiff's federally protected rights. Further, the unlawful employment practices complained of herein provide a basis for imputing liability on Defendant, as Defendant was aware of the harassment and the unlawful employment practices and failed to take prompt or reasonable action to end the harassment.

## COUNT II (RETALIATION/RETALIATORY HARASSMENT)
## (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. §§ 2000(e), ET. SEQ.)

42. Plaintiff Killian hereby realleges and reavers paragraphs 1-33 as if fully set forth herein.

43. Plaintiff Killian, at all times material hereto, engaged in protected conduct when he complained of the conduct of Supervisor Rosado.

44. As a result of Plaintiff's complaints of the sexual harassment engaged in by his supervisor, Defendant undertook a campaign of material adverse action against Plaintiff Killian, as outlined.

45. A causal nexus exists between Plaintiff's protected conduct-- complaining to his superiors-- and the material adverse actions taken by Defendant against him.

46. Moreover, Defendant continued to ignore Supervisor Rosado's harassment of Plaintiff, which was non-consensual and instead has and continues to subject Plaintiff to adverse treatment.

## **CLAIMS FOR RELIEF**

47. WHEREFORE, Plaintiff requests entry of a judgment in his favor and an award of the following relief:

A. Compensatory damages;

B. Punitive damages;

C. Entry of a permanent injunction prohibiting Defendant, as head of DHS, and his employees, agents, officers, representatives, and servants from further discrimination on the grounds set forth herein against the Plaintiff in promotion, disciplinary, and other employment decisions;

D. Entry of a declaratory judgement in Plaintiff's favor, finding that Defendant has violated and is violating Plaintiff's rights under Title VII;

E. An award to Plaintiff for its attorney's fees and costs of suit; and

F. An award of any other such relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury of all issues so triable.

Dated:  March 29, 2021

                                             Respectfully Submitted,

                                             Kurzban Kurzban Tetzeli & Pratt
                                             131 Madeira Avenue
                                             Coral Gables, FL 33134
                                             (305) 444-0060


                                             By:  ___/s/_*Helena Tetzeli*_____
                                             Helena Tetzeli, Esq.
                                             Florida State Bar No. 759820
                                             Helena@kktplaw.com

                                             *Attorney for Plaintiff Scott Saint Killian*